**Thomas J. KOHR and Marilyn Kohr, Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 86–0334.**

United States District Court, M.D. Pennsylvania.

March 6, 1987.

As Amended March 10, 1987.

Elliot A. Strokoff, Harrisburg, Pa., for plaintiffs.

Rachel Schao, Asst. U.S. Atty., U.S. Atty.'s Office, Philadelphia, Pa., Henry S. Friedman, Trial Atty., U.S. Dept. of Justice, Washington, D.C., Sally Lied, Asst. U.S. Atty., U.S. Atty.'s Office, Harrisburg, Pa., for defendant.

MEMORANDUM

RAMBO, District Judge.

*Procedural Background*

On October 7, 1985, plaintiffs Thomas Kohr and Marilyn Kohr, husband and wife, filed this action in federal court in the Eastern District of Pennsylvania, seeking a refund of $1,167.37 plus interest, for federal income taxes paid on their joint return for 1981. On defendant's Motion to Dismiss, the district court transferred the action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1406(a), effective January 27, 1986.

On October 27, 1986, defendant filed a Motion for Summary Judgment and Brief in Support. On November 17, 1986, after an extension of time, plaintiffs submitted a Cross-Motion for Summary Judgment and

Brief in Support, thus opposing defendant's summary judgment motion. On December 1, 1986, defendant filed its reply brief, opposing plaintiff's cross-motion for summary judgment and supporting its own motion for summary judgment. Both motions are now ripe for disposition. The sole issue for decision is whether plaintiffs are entitled to deduct expenses incurred by Mr. Kohr in traveling to and from his jobsite.

*Factual Background*

The undisputed facts are as follows. Plaintiffs, husband and wife, were residents of Lebanon, Pennsylvania at the time they filed this Complaint. Plaintiffs filed a joint federal income tax return for the calendar year 1981. Hereinafter, plaintiff will refer solely to Thomas J. Kohr.

Plaintiff, Thomas Kohr, was employed as a construction electrical worker since 1969. Beginning on December 22, 1980, Kohr began working for Bechtel Construction, Inc. at the Limerick Power Plant near Norristown, Pennsylvania. The history of his employment is as follows:

| Date | | Reason for | Employer |
|------|------|------------|----------|
| From | To | Leaving | |
| 01/80 | 06/80 | lack of work | Catalytic, Inc. (Wilkes-Barre) |
| 06/80 | 09/80 | lack of work | H.P. Foley (Reading) |
| 09/80 | 12/80 | lack of work | Bogan (Norristown) |
| 12/20/80 | 05/84 | lack of work | Limerick (Norristown) |
| 05/84 | 10/84 | lack of work | Limerick (Norristown) |
| 10/84 | 04/30/85 | lack of work | Catalytic, Inc. (Wilkes-Barre) |
| 05/20/85 | 06/08/85 | lack of work | Limerick (Norristown) |
| 06/23/85 | 10/04/85 | lack of work | H.P. Foley (Reading) |
| 10/28/85 | 01/10/86 | lack of work | General Electric (Steelton) |
| 03/27/86 | present | | Limerick (Norristown) |

Kohr was a member of the International Brotherhood of Electrical Workers (IBEW) Local No. 143, headquartered in Harrisburg, Pennsylvania. The Limerick nuclear power plant construction job was under the jurisdiction of IBEW Local 380, headquartered in Norristown, Pennsylvania. Plaintiff and his wife have lived in Lebanon, Pennsylvania all their married lives and in 1979 purchased a house there for $58,000 with a $35,000 mortgage at 10½ percent interest. The Limerick construction site was 58 miles from the Kohr's house in Lebanon, Pennsylvania. In 1981, the tax year in question, Mr. Kohr maintained his residence in Lebanon, drove to Norristown each working day and incurred $2,800 in automobile expenses in traveling to and from his house and the construction job site in Norristown, Pennsylvania.

When Kohr began working at Limerick, he was not told anything about how long the job would last. In addition to the typical uncertainty surrounding job duration on a big project, due to common coordination problems, Kohr was uncertain of the length of his employment because he was working outside the jurisdiction of his Local No. 143. Further, the construction of the Limerick project itself was plagued with problems and delays from the start in 1970.

Kohr continued to seek work within the jurisdiction of his own Local No. 143 by registering his availability for employment on the out-of-work list of Local No. 143. In 1981, Kohr viewed his job at Limerick as being only on a day-to-day basis.

*Discussion*

Plaintiff attempts to claim his automobile expenses incurred in driving to and from his place of work as a trade or business expense deduction on his 1981 tax return under 26 U.S.C. § 162. Section 162 provides in pertinent part,

(a) *In General.* There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

... (2) traveling expenses (including amounts expended for meals and lodg-

ing other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; ...

26 U.S.C. § 162. As shown in Judge Nealon's opinion, two separate analyses apply to this section of the Tax Code. *Kresge v. U.S.*, 49 A.F.T.R. 82–673 (M.D.Pa.1982).[1] First, a business expense may be deductible under subsection (a) of section 162 if the expenses are "ordinary and necessary" and incurred while "carrying on a trade or business." 26 U.S.C. § 162(a). Under this provision, courts have applied the "temporary or indefinite" test. *See e.g., Kasun v. U.S.*, 671 F.2d 1059, 1062 (7th Cir.1982). Under this test the critical factor is whether the job taken by the taxpayer is best characterized as temporary or indefinite. As stated by the Second Circuit Court of Appeals,

> [w]hen an assignment is truly temporary, it would be unreasonable to expect the taxpayer to move his home, and the expenses are thus compelled by the 'exigencies of business'; when the assignment is 'indefinite' or 'indeterminate'; the situation is different and, if the taxpayer decides to leave his home where it was, disallowance is appropriate, not because he has acquired a 'tax home' in some lodging house or hotel at the worksite but because his failure to move his home was for his personal convenience and not compelled by business necessity.

*Rosenspan v. U.S.*, 438 F.2d 905, 912 (2d Cir.1971).

The second method under which a business expense may be deductible comes under paragraph (2) of section 162, subsection (a) of the Tax Code. Under this analysis, if the expenses were "travel expenses" incurred "while away from home in the pursuit of a trade or business," then they are deductible business expenses under § 162(a)(2). Under this paragraph, courts have applied the "overnight rule," which stands for the proposition that in order for a business travel expense to be incurred "while away from home" the taxpayer must sleep or rest overnight away from

home. *U.S. v. Correll*, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). *See also, Boone v. U.S.*, 482 F.2d 417, 419 n. 2 (5th Cir.1973).

Clearly under the facts of the case at bar and § 162(a)(2), plaintiff cannot deduct his travel expenses while away from home, because he did not sleep or rest overnight away from his home in Lebanon. Indeed, plaintiff commuted daily from his home in Lebanon to his job location in Limerick. Kohr Affidavit, ¶ 8; Statement of Material Facts, ¶ 4.

■ Next the court considers whether plaintiff can deduct his expenses under the general language of § 162(a). Costs incurred by a taxpayer in traveling from a residence to a place of employment are ordinarily non-deductible personal expenses. 26 U.S.C. § 262. As stated by Judge Nealon, "[t]hese travel expenses are commuting costs which, under Treas.Reg. § 1.262–1(b)(5), every taxpayer must bear. *Sanders v. C.I.R.*, (71–1 U.S.T.C. § 9260), 439 F.2d 296." *Kresge v. U.S.*, 49 A.F.T.R. 82–673 (M.D.Pa.1982). However, an exception to this general rule exists where the place of employment is "temporary" as compared with "indefinite." *Peurifoy v. Commissioner*, 358 U.S. 59, 60, 79 S.Ct. 104, 105, 3 L.Ed.2d 30 (1958).

■ The temporary v. indefinite test is a factual test applied on a case-by-case basis. *Id.* at 60, 79 S.Ct. at 105. Further, the burden is on the taxpayer to prove that the facts of the particular case fall squarely within the rule. *Amoroso v. Commissioner*, 193 F.2d 583 (1st Cir.1952). As explained by the Eighth Circuit Court of Appeals,

> [t]he temporary or indefinite test serves a similar function in the § 162(a) context in attempting to discern whether transportation expenses were incurred for a business purpose rather than a personal one. The underlying premise in both situations is the idea that a taxpayer's choice of a residence is circumscribed by his expected term of employment. A taxpayer has considerable discretion in

---

1. *Kresge*, No. 81–0038, slip op. (M.D.Pa. Jan. 21, 1982) (Nealon, J.).

determining where he wants to live when he will be employed in a location for a substantial or indefinite period of time. This discretion is severly limited or non-existent when a taxpayer will be employed for only a short or temporary period of time. Thus, the choice of a residence is a personal decision in the first situation, and a business decision in the latter.

*Frederick v. U.S.*, 603 F.2d 1292, 1295 (8th Cir.1979).

■ Defendant contends that the expenses incurred in commuting were non-deductible personal living expenses because they resulted from plaintiff's desire to maintain his residence at a place other than where his employer's business was located. Defendant relies primarily on the seminal case of *Commissioner v. Flowers*, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946) for this proposition. Initially the court notes that the *Flowers* court interpreted § 23(a)(1)(A) of the Internal Revenue Code of 1939, the predecessor to § 162(a)(2). Under the *Flowers* analysis, the taxpayer's travel expenses were incurred because of his personal preference to continue to live in Mississippi and work in Alabama, rather than business necessity. Further, the taxpayer spent time overnight in both places. *Flowers*, 326 U.S. at 468–69, 66 S.Ct. at 251–52.

The plaintiff argues that his commuting expenses are deductible based on the temporary v. indefinite test. Plaintiff argues that continuing to live in Lebanon in 1981 was "hardly a whimsical personal preference." Plaintiffs' Brief in Support of Cross Motion for Summary Judgment at 7, Document 13 of the Record. Further, plaintiff presents the facts that he viewed his job as being on a day-to-day basis, he was working outside the jurisdiction of his local union and could lose his job to any union member from the local union in Norristown and he continued to look for work in Harrisburg. Regarding his construction job, plaintiff states that problems and delays plagued the Limerick project from the beginning, the cost overrun on the project was gigantic; substantial anti-nuclear senti-

ment circulated during 1981, and the P.U.C. held hearings to decide whether the project would continue. Kohr Affidavit at ¶¶ 13–18. Plaintiff argues that in facing these realities surrounding his employment at Limerick, he viewed the job as on a day-to-day basis. Kohr Affidavit at ¶ 20.

Some courts have allowed the deduction for travel expenses to and from work, holding that the taxpayer's employment was temporary. *Frederick v. U.S.*, 603 F.2d 1292 (8th Cir.1979); *Measeles v. Commissioner*, T.C.Memo. 1983–90 (1983); *Miller v. Commissioner*, T.C.Memo. 1979–087 (1979).

In *Frederick*, the court of appeals affirmed the district court's finding that the taxpayer's employment was temporary, thus entitling him to a deduction under 26 U.S.C. § 162(a). *Frederick v. U.S.*, 603 F.2d at 1296. In that case the taxpayer, a carpenter, began work on May 20, 1970 on an antiballistic missile site in a town eighty-one (81) miles from his residence. He continued working there until May 25, 1973 when the carpentry work at the site was substantially completed. *Id.* at 1293. Controversy regarding the missile site and rumors that construction would be shut down completely abounded. Consequently, "there was no assurance throughout the entire life of the project that it would be completed and placed in operation." *Id.* at 1296.

In *Measeles*, the plaintiff, an electrician, lived with his wife and children in Show Low, Arizona, and took employment June 1977 in St. Johns, Arizona, which is approximately 60 miles from his home in Show Low. In holding that plaintiff's job was temporary, the court focused on the facts that the taxpayer worked outside the general area of Show Low, that the taxpayer could have been fired, recalled by the union or laid off, that the taxpayer had held jobs of short duration prior to the job in question, that the length of time the taxpayer had held the job was about one year, and that the taxpayer knew when he accepted the job in Show Low that his stay would be relatively short. *Measeles v. Commissioner*, T.C.Memo. 1983–90 (1983).

In *Miller*, the tax court reached the same conclusion, that the travel expenses were deductible, stating that,

> [r]elevant factors include the reasonably anticipated duration of the employment, the expectation that it will end in a reasonably short period, the strength of the taxpayer's business, economic and family ties with his original home, the extent of duplication of living expenses, and the forseeable economic cost of moving his home and family to the new location and back again. *Pazden v. Commissioner*, 36 T.C.M. 583 (1977).

*Miller v. Commissioner*, T.C.Memo. 1979–87 (1979). In *Miller*, the taxpayer was not hired by Bechtel (the prime contractor) nor did he have a contract. The union dispatched Miller to his job and he was not hired for a specific duration. Further, the need for crane operators fluctuated and depended upon the level of activity of others. The taxpayer in *Miller*, however, was seeking to deduct expenses for meals and lodging rather than commuting expenses. The court stated, "[i]n light of all the circumstances, we believe that petitioner could not reasonably have been expected in 1973 or 1974 to move his residence to Rock Springs. Throughout the period his employment at Bechtel was subject to termination on very short notice and therefore temporary rather than indefinite." *Miller v. Commissioner*, T.C.Memo. 1979–87 (1979).

In contrast other courts have denied the deduction, holding the taxpayer's employment was indefinite. *Boone v. U.S.*, 482 F.2d 417 (5th Cir.1973); *Kresge v. U.S.*, 49 A.F.T.R. 82–673 (M.D.Pa.1982).

In *Boone*, the Fifth Circuit Court of Appeals reversed a jury verdict for the taxpayer and held that the Commissioner was entitled to a directed verdict because "Boone's employment was non-temporary, it was indefinite, and the taxpayer's expenses of going to and from the jobsite daily did not qualify for the ordinary and necessary business expense deduction claimed under 162(a)." *Boone v. U.S.*, 482 F.2d at 420. In that case the taxpayer traveled to work a distance of eighty miles one way for fifteen months because there was no work closer to home. *Id.* at 418.

In *Kresge*, the court found the taxpayer's employment was indefinite and thus his expenses non-deductible. In that case the taxpayer commuted thirty-nine miles each way to work, and was employed approximately fifty weeks during the tax year in question. Mr. Kresge had no guarantee of work nor was he told how long the work was expected to last, and the court concluded that his employment was indefinite. *Kresge v. U.S.*, No. 81–0038, slip op. (M.D.Pa. Jan. 21, 1982).

Turning to the facts in the case at bar, the facts show that Mr. Kohr's employment was temporary. As stated by the Eighth Circuit Court of Appeals,

> [i]n other words, *a court must evaluate those facts available to a taxpayer at a point in time* and determine, in light of those facts, whether future employment was for a temporary or indefinite period. The determination of whether a job is temporary or indefinite is a factual question, and a court must examine all the facts and circumstances in reaching its conclusion.

*Frederick v. U.S.*, 603 F.2d 1292, 1296 (8th Cir.1979). Examining the facts viewed by plaintiff at the beginning of his employment at Limerick, without gaining the benefit of hindsight, this court views the relevant factors to be that plaintiff commuted approximately fifty-eight miles each way to his job in Norristown, he was not given any indication how long his job would last (in fact, he was given no assurances in this respect), and he was not given any indication by the employer that his job would be of long duration. Further, Mr. Kohr represents his economic and family ties with Lebanon as strong and that he continued to seek out jobs in his local union's jurisdiction shows this continuing desire. In addition, the cost of moving to Norristown may have been prohibitive. Plaintiff also states that great uncertainties surrounded the construction at Limerick which added to the prospect that his job would last only a short time, such as the cost overruns on the construction project, the delays on the

project, the substantial anti-nuclear sentiment circulating during 1981 and the P.U.C. hearings held to decide whether the project would even continue. Plaintiff has demonstrated to this court's satisfaction that his job at the Limerick Power Plant in 1981 was temporary so as to entitle him to a deduction for his business expenses for the tax year 1981 under 26 U.S.C. § 162(a).

Therefore, this court will grant summary judgment in favor of plaintiff and against the defendant.